IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LENOVO (UNITED STATES) INC. and MOTOROLA MOBILITY LLC, <br><br> Plaintiffs, <br><br> v. <br><br> INTERDIGITAL TECHNOLOGY CORPORATION, IPR LICENSING, INC., INTERDIGITAL COMMUNICATIONS, INC., INTERDIGITAL HOLDINGS, INC., and INTERDIGITAL, INC. <br><br> Defendants. | C.A. No. 20-493-LPS |

Jack B. Blumenfeld, Rodger D. Smith II, Cameron P. Clark, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Richard A. Cederoth, David C. Giardina, Leif E. Peterson, SIDLEY AUSTIN LLP, Chicago, IL

Melissa Colon-Bosolet, Ketan V. Patel, SIDLEY AUSTIN LLP, New York, NY

Scott M. Border, Joseph A. Micallef, SIDLEY AUSTIN LLP, Washington, DC

    Attorneys for Plaintiffs

Neal C. Belgam, Eve H. Ormerod, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE

David S. Steuer, Michael B. Levin, Maura L. Rees, Ryan R. Smith, WILSON SONSINI GOODRICH & ROSATI, Palo Alto, CA

    Attorneys for Defendants

**MEMORANDUM OPINION**

March 24, 2021
Wilmington, Delaware

STARK, U.S District Judge:

Pending before the Court is a Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction (D.I. 7) filed by Defendants IPR Licensing, Inc., InterDigital Communications, Inc., InterDigital Holdings, Inc., InterDigital Inc., InterDigital Patents Holdings, Inc., and InterDigital Technology Corporation (collectively, "InterDigital" or "IDC"). InterDigital seeks to dismiss Plaintiffs Lenovo (United States) Inc. and Motorola Mobility LLC's (collectively, "Lenovo") Sherman Act Section 1 and Section 2 antitrust counts for lack of antitrust standing and failure to state a claim. InterDigital further asks this Court to require Lenovo to plead its antitrust counts (as well as a breach of contract count, which is not the subject of the pending motion) as compulsory counterclaims in a patent infringement suit InterDigital is pressing in this Court.

For the reasons stated below, InterDigital's motion will be granted in part and denied in part.

## I.  BACKGROUND

InterDigital is a patent holding company that holds Standard Essential Patents ("SEPs") related to cellular technologies underlying 3G and 4G LTE wireless standards. (D.I. 1 Ex. 2 ¶ 27) Lenovo is a cellular telephone manufacturer that wishes to incorporate those standards into the chipsets it places in its phones. (*Id.* at ¶¶ 18-19) The relevant standards are promulgated by the European Telecommunications Standards Institute ("ETSI"), a member of the Third Generation Partnership Project. (D.I. 1 ¶ 1)

The parties' dispute relates in part to obligations that InterDigital incurred pursuant to its relationship with ETSI. As a standards-promulgating organization, ETSI commercialized the

1

technology that is now used worldwide as 3G and 4G LTE phones. (*Id.* ¶¶ 42-43) To do so, ETSI developed new technology via patented and unpatented technological innovations. (*Id.* ¶ 44)

In promulgating the 3G and 4G LTE standards, ETSI necessarily prevents other technological competition by disincentivizing development of other standards. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) ("When a patented technology is incorporated in a standard, adoption of the standard eliminates alternatives to the patented technology."). Further, ETSI's implementation of the standards requires would-be implementers to risk infringing the many patents underlying them. (*Id.* ¶¶ 44-45) This poses a substantial antitrust risk – in obtaining market power, ETSI and those with rights to SEPs may be able to hold-up implementers by demanding payment for licenses potentially not commensurate with the patents' worth. (*Id.*)

To mitigate the risk of antitrust concerns, ETSI enters into a contract with SEP holders. That contract, governed by French law (D.I 1 Ex. 2 § 12), provides that any holder of a patent that may reasonably relate to the ETSI 3G and 4G LTE standards must notify ETSI "in a timely fashion." (*Id.* § 4.1) SEP holders must also agree to bestow licenses to any would-be implementer under fair, reasonable, and non-discriminatory ("FRAND") terms. (*Id.* § 6.1)

InterDigital submitted its patents for consideration by ETSI (D.I. 1 ¶ 61), thereby contractually obligating InterDigital to license its patents under FRAND terms upon their incorporation into the 3G and 4G LTE standards (D.I. 1 Ex. 2 §§ 6.1-6.4 & App'x A). That FRAND obligation underlies the dispute between the parties here.

Further actions involving Lenovo and InterDigital are pending in the United Kingdom and in this Court, generally relating to issues of InterDigital's compliance with its FRAND

2

obligations. The United Kingdom litigation was filed by InterDigital on August 27, 2019, and asks the Business and Property Courts of England and Wales to declare that InterDigital has complied with its FRAND obligations in its offers to Lenovo. (D.I. 1 ¶¶ 86-88) In the alternative, InterDigital asks that the United Kingdom court determine a reasonable royalty that is FRAND for Lenovo to pay for practicing the InterDigital SEP portfolio. (*Id.*) The United States action was filed by InterDigital one day later, on August 28, 2019, and seeks a declaration that Lenovo's actions are an infringement of InterDigital's U.S. SEPs. (*Id.* ¶ 89) InterDigital further asks for a determination that InterDigital's licensing offers are FRAND, thereby entitling InterDigital to an injunction against Lenovo's infringing activity. (*Id.*)

The instant matter concerns antitrust. In it, Lenovo alleges that InterDigital defrauded ETSI when it agreed to license its SEPs on FRAND terms, allowing InterDigital to obtain unlawful monopoly power and subjecting Lenovo to a risk of antitrust harm from InterDigital's exercise of that unlawful monopoly power. (*See generally* D.I. 1 Ex. 2) InterDigital responds that because it has offered licenses on FRAND terms – and has filed the United Kingdom and United States actions to confirm that its offers are FRAND – Lenovo has not (and cannot, as a matter of law) suffer any antitrust harm. (D.I. 8 at 8-11)

In considering the issues presented by InterDigital's motion, the Court has considered not only the parties' extensive briefing (*see* D.I. 8, 18, 20, 23, 36) but also a statement of interest and a further brief from the United States (D.I. 13, 28) and an amicus brief from The App Association (D.I. 14). The Court also reviewed the multiple supplemental authorities submitted by the parties. (*See* D.I. 27, 29, 31, 38) The Court heard argument on October 27, 2020. (D.I. 40) ("Tr.")

3

## II. LEGAL STANDARDS

### A. Motions to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported

4

conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court may treat the motion as "either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In a facial challenge, as is presented here, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* That is, the Court here applies the same standard for Rule 12(b)(1) as it does under Rule 12(b)(6).

### B. Antitrust Standing

As the Third Circuit explained in *Pace Elecs., Inc. v. Canon Comp. Sys., Inc.*, 213 F.3d 118, 120 (3d Cir. 2000):

> To state a claim for damages under section 4 of the Clayton Act, 15 U.S.C. § 15, a plaintiff must allege more than that it has suffered an injury causally linked to a violation of the antitrust laws. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 50 L.Ed.2d 701 (1977). In addition, it must allege antitrust injury, "which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.*

### C. Sherman Act Section 1

Judge Andrews has summarized the standards for analyzing a Sherman Act Section 1 claim at the motion to dismiss stage:

> To maintain an antitrust action under § 1 of the Sherman Act, a plaintiff must plead two elements: (1) "the defendant was a party to a contract, combination . . . or conspiracy;" and (2) "the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Burtch v. Milberg Factors, Inc.*,

5

662 F.3d 212, 221 (3d Cir. 2011) (quoting *In re Ins. Brokerage*, 618 F.3d 300, 315 (3d Cir. 2010)). . . .

Courts have collectively described the first element of a Section 1 claim – requiring a "contract, combination, or conspiracy" – as "concerted action." *Ins. Brokerage.*, 618 F.3d at 315 (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 117 (3d Cir.1999)). Concerted action is defined as "a unity of purpose or a common design and understanding or a meeting of minds or a conscious commitment to a common scheme." *Ins. Brokerage*, 618 F.3d at 315 (quoting *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004)). Therefore, Section 1 claims "always require the existence of an agreement." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254 (3d Cir. 2010); 15 U.S.C. § 1. The agreement may be shown by either direct or circumstantial evidence. *Lifewatch Serv. Inc. v. Highmark Inc.*, 902 F.3d 323, 333 (3d Cir. 2018). . . .

The second element of an antitrust claim – an unreasonable restraint on trade – is analyzed under one of two standards: *per se* or rule of reason. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). . . . "[T]he rule of reason requires the factfinder to decide whether[,] under all the circumstances of the case[,] the restrictive practice imposes an unreasonable restraint on competition." *Ariz. v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 343, 102 S. Ct. 2466, 73 L.Ed.2d 48 (1982). Because the rule of reason requires courts to conduct a "fact-specific assessment," courts "usually cannot properly apply the rule of reason without an accurate definition of the relevant market." *Ohio v. Am. Express Co.*, __ U.S. __, 138 S. Ct. 2274, 2285, 201 L.Ed.2d 678 (2018); *Lifewatch*, 902 F.3d at 336. Under the *per se* standard, however, "certain agreements or practices[,] which because of their pernicious effect on competition and lack of any redeeming virtue[,] are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *N. Pac. Railway Co. v. United States*, 356 U.S. 1, 5, 78 S. Ct. 514, 2 L.Ed.2d 545 (1958). "Such determinations of *per se* illegality are not casually made." *Larry v. Muko, Inc. v. Sw. Pa. Bldg. & Const. Trades Council*, 670 F.2d 421, 428 (3d Cir. 1982). "It is only after considerable experience with certain business relationships that courts classify them as *per se* violations of the Sherman Act." *United States v. Topco Assoc., Inc.*, 405 U.S. 596, 607-08, 92 S. Ct. 1126, 31 L.Ed.2d 515 (1972).

*Int'l Constr. Prods. LLC v. Caterpillar Inc.*, 419 F. Supp. 3d 791, 800-04 (D. Del. 2019).

6

### D. Sherman Act Section 2

The Third Circuit's opinion in *Broadcom* sets out the standards for analysis of a Sherman Act Section 2 claim:

> Section 2 of the Sherman Act, in what we have called "sweeping language," makes it unlawful to monopolize, attempt to monopolize, or conspire to monopolize, interstate or international commerce. It is, we have observed, "the provision of the antitrust laws designed to curb the excesses of monopolists and near-monopolists." *LePage's Inc. v. 3M,* 324 F.3d 141, 169 (3d Cir.2003) (en banc). Liability under § 2 requires "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71 (1966). . . .
>
> The existence of monopoly power may be proven through direct evidence of supracompetitive prices and restricted output. *United States v. Microsoft Corp.,* 253 F.3d 34, 51 (D.C.Cir.2001) (en banc); *Rebel Oil Co. v. Atl. Richfield Co.,* 51 F.3d 1421, 1434 (9th Cir.1995). It may also be inferred from the structure and composition of the relevant market. *Harrison Aire,* 423 F.3d at 381; *Microsoft,* 253 F.3d at 51. . . .
>
> The second element of a monopolization claim under § 2 requires the willful acquisition or maintenance of monopoly power. As this element makes clear, the acquisition or possession of monopoly power must be accompanied by some anticompetitive conduct on the part of the possessor. *Verizon Commcn's Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 407, 124 S. Ct. 872, 157 L.Ed.2d 823 (2004). Anticompetitive conduct may take a variety of forms, but it is generally defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits. *LePage's,* 324 F.3d at 147. Conduct that impairs the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way may be deemed anticompetitive. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 604-05 & n. 32, 105 S. Ct. 2847, 86 L.Ed.2d 467 (1985). Conduct that merely harms competitors, however, while not harming the competitive process

7

> itself, is not anticompetitive. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 224 (1993).

501 F.3d at 306-08 (internal footnote omitted).

### E. Federal Rule Of Civil Procedure 13(a)

The Third Circuit has described the inquiry courts must undertake to determine whether a claim is compulsory, under Federal Rule of Civil Procedure 13(a), as being:

> "whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.,* 292 F.3d 384, 389 (3d Cir. 2002) (quoting *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir. 1978)). This court has stated that a logical relationship exists "where separate trials on each of the[] respective claims would involve a substantial duplication of effort and time by the parties and the courts." *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir. 1961); *see also Transamerica,* 292 F.3d at 389-90. The compulsory counterclaim inquiry thus requires essentially the same comparison between claims as the res judicata analysis. *See Transamerica,* 292 F.3d at 391 (noting "the close connection between Rule 13(a) and the doctrine of claim preclusion").

*M.R. v. Ridley Sch. Dist.,* 744 F.3d 112, 121 (3d Cir. 2014).

### III. DISCUSSION

#### A. Lenovo Adequately Pleads Antitrust Standing

To plead antitrust standing, a plaintiff must adequately allege an injury that antitrust law seeks to prevent. *See Pace Elecs., Inc.,* 213 F.3d at 120. Lenovo has alleged such an injury. Lenovo's allegations that it will be forced out of the cellular market or forced to pay higher-than-FRAND royalties are sufficient to state an injury caused by InterDigital taking action prohibited by the antitrust laws. That is, the injuries Lenovo claims it is suffering could not have occurred ***unless*** InterDigital has committed some type of antitrust law violation. Therefore, Lenovo alleges injury flowing from that which renders InterDigital's alleged conduct unlawful.

8

InterDigital's argument to the contrary is not persuasive. InterDigital largely relies on *Godo Kaisha IP Bridge 1 v. TCL Commc'ns Tech. Holdings, Ltd.*, C.A. No. 15-634-JFB-SRF D.I. 367 (D. Del. Feb. 28, 2018), *R&R adopted*, 2018 U.S. Dist. LEXIS 38506 (Mar. 8, 2018), which dismissed an antitrust claim for lack of antitrust standing based on injury flowing from a patent lawsuit's prospective damages award. The alleged injury in *Godo Kaisha* had not occurred at the time the plaintiff filed its pleading. Instead, that injury "appear[ed] to rely on the court or jury creating an antitrust injury in the context of th[e] litigation through ***the award of a supra-FRAND damages award***." *Id.* at 22 (emphasis added). Here, by contrast, the alleged injury is not judgment-dependent. Instead, Lenovo alleges that InterDigital is already injuring it by ***presently demanding supra-FRAND royalties*** and depriving Lenovo of access to cellular technology, all because Lenovo will not satisfy InterDigital's demands. (*E.g.*, D.I. 1 Ex. 2 ¶¶ 69, 92) The allegations here are sufficient to plead antitrust injury.

Also unavailing is InterDigital's argument that the United Kingdom litigation and/or offer to arbitrate constitute a "neutral FRAND determination." No decision has issued in the U.K. matter, and no arbitration has commenced. At least until there is such a decision, there is a factual dispute about whether InterDigital's license offers are FRAND. Resolving that factual dispute in Lenovo's favor – as the Court must, at this stage – means that Lenovo's allegations of InterDigital demanding supra-FRAND terms and possibly excluding Lenovo from the market are plausible. The mere ***possibility*** that the U.K. action or some uninitiated arbitration could yield FRAND terms does not change the present reality that, assuming Lenovo's pleadings are true, Interdigital is offering no such FRAND terms today.[1]

---

[1] Further (albeit unnecessary) support for the Court's conclusion is provided by The App Association's contention that the United Kingdom action will yield a rate that is not FRAND. (*See generally* D.I. 35) Without crediting (or rejecting) this argument, the Court observes that

9

Hence, again, Lenovo has adequately pled harm of the type the antitrust laws contemplate and, therefore, has adequately alleged antitrust standing.

**B.      Lenovo Has Not Adequately Alleged A Section 1 Claim**

To adequately plead a violation of Section 1 of the Sherman Act, Lenovo must plausibly allege an agreement in furtherance of a common scheme. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254 (3d Cir. 2010) ("[A] plaintiff must allege facts plausibly suggesting 'a unit or purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.'") (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 n.13 (1984)). The Court agrees with InterDigital that Lenovo, which tries to allege concerted action between InterDigital and ETSI and/or between InterDigital and other ETSI members, has failed to do so. Lenovo does not point to an agreement between members of ETSI or any scheme resulting from such an agreement. (D.I. 8 at 16-18)

Assuming, *arguendo*, that the ETSI agreement is an agreement in furtherance of a common scheme, Lenovo fails to connect how InterDigital's alleged actions (i.e., failure to offer a FRAND royalty) were the same allegedly unlawful actions contemplated and agreed to by ETSI members in setting cellular standards. Instead, as the United States aptly notes, "Lenovo's allegations focus on InterDigital's unilateral breach of its FRAND commitment, and purely unilateral conduct is not actionable under Section 1." (D.I. 13 at 12; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007) (complaint must allege "actual agreement" and not merely "parallel conduct"); *Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 4948567, at *7 (N.D. Cal. Oct.

---

the possibility that the ultimate U.K. court determination may not truly be FRAND weighs in favor of finding antitrust standing.

10

18, 2011) ("Plaintiff cannot state a claim absent an allegation that it acted in concert with another party; it is not sufficient to allege that it acted alone in a collaborative forum.").

Lenovo suggests that ETSI members enabled the alleged breach by InterDigital by agreeing to a contract lacking "reasonable safeguards." (*Id.* at 17) The Court is not persuaded. The complaint contains no plausible allegation of a link between a lack of "reasonable safeguards" in the ETSI Agreement and concerted efforts to deny implementers, like Lenovo, FRAND-compliant licenses. Lenovo has not alleged anticompetitive effect flowing from an agreement. *See Int'l Constr. Prods. LLC*, 419 F. Supp. 3d at 800-04; *see also generally Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (noting Section 1 pleading requirement of "impos[ition of] an unreasonable restraint on trade"). Its contention that an alleged lack of "reasonable safeguards" creates anticompetitive effects is conclusory. (D.I. 15 at 16-17)

As the United States points out, agreements between SEP holders and standards-promulgating organizations (like that between InterDigital and ETSI) are generally regarded as procompetitive. (D.I. 13 at 4, 7-14) That was the understanding of the Third Circuit in *Broadcom*, 501 F.3d at 308-09; *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 501 (1988). InterDigital has not persuasively rebutted this understanding. Its conclusory allegations to the contrary need not be accepted, even on a motion to dismiss.

Therefore, the Court will grant InterDigital's motion to dismiss Lenovo's Section 1 claim. However, such grant is without prejudice to Lenovo having an opportunity to file an amended complaint, should Lenovo wish to do so.

### C. Lenovo Has Adequately Alleged A Section 2 Claim

In the standards-setting context, "a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms, . . . coupled with a[] [standard-setting

11

organization's] reliance on that promise when including the technology in a standard, and . . . the patent holder's subsequent breach of that promise, is actionable anticompetitive conduct." *Broadcom*, 501 F.3d at 314. Lenovo's allegations track those at issue in *Broadcom* and adequately state a Section 2 claim.

Lenovo's complaint is similar to that which this Court found sufficient in *Microsoft Mobile*,[2] which itself was consistent with *Broadcom*. *See Microsoft Mobile Inc. v. Interdigital, Inc.*, 2016 WL 1464545, at *2 (D. Del. Apr. 13, 2016). Lenovo alleges what *Broadcom* requires: that InterDigital lied to ETSI about its commitment to FRAND licensing in order to obtain the benefit of SEP status for its patent portfolio, thereby unlawfully obtaining market power which InterDigital now seeks to exploit for its own gain. (D.I. 1 Ex. 2 ¶¶ 61-70) These allegations plausibly state a claim for Section 2 antitrust liability.[3]

InterDigital's arguments to the contrary again focus on the existence of the United Kingdom action and potential arbitration, which are not persuasive. InterDigital insists that its offer to arbitrate (or litigate) to set a FRAND rate distinguishes it from Qualcomm, against whom Broadcom's antitrust suit survived. (*See, e.g.*, Tr. at 15-23) In InterDigital's view, its offer to arbitrate or to have the United Kingdom court determine a royalty rate that is FRAND demonstrates the non-viability of Lenovo's claim. (D.I. 8 at 8-9; *see also* Tr. at 22 (IDC arguing that its offer to arbitrate "defeats any attempt to rely on the holding of *Broadcom vs. Qualcomm*,"

---

[2] Indeed, it appears that Lenovo prepared a table of ETSI declarations identical to that utilized in Microsoft. *Compare Microsoft Mobile, Inc. v. InterDigital, Inc.*, C.A. No. 15-723-RGA D.I. 1 ¶ 44 tbl. *with Lenovo (United States) Inc. v. InterDigital, Inc.*, C.A. No. 20-493-LPS D.I. 1 ¶ 61.

[3] Several of the authorities on which IDC relies for its contrary view are from outside of the Third Circuit and do not follow *Broadcom*, which is binding on this Court. *See, e.g., FTC v. Qualcomm*, 969 F.3d 974, 1005 (9th Cir. 2020); *Continental Auto. Sys., Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712 735 (N.D. Tex. 2020).

because "InterDigital has offered to give up any supposed holdup power in favor of a fair, disinterested procedure that would set the terms of the license")) Neither body has ruled that InterDigital's offers are, in fact, FRAND. Further, amicus The App Association casts doubt on whether such a determination would truly be FRAND, for reasons involving national comity and infringement determinations. (*See generally* D.I. 35) Given that there is not today a determination of what the royalty rate between InterDigital and Lenovo is going to be, or a determination that this rate (whatever it turns out to be) is FRAND, there is not a basis to find that Lenovo has failed to state a claim.[4]

InterDigital's argument goes to the merits of Lenovo's claim, not the sufficiency with which it is pled. It may very well be that the U.K. Court determines InterDigital's offer to be FRAND. But, at present, the Court must accept Lenovo's allegation that InterDigital's offer is not FRAND, as well as Lenovo's further allegations that InterDigital intended to offer a non-FRAND license, and that InterDigital's attempts to litigate or to arbitrate for a FRAND determination do not change those intentions.[5] As Lenovo points out, there is no binding precedent holding that the mere *availability* of third-party FRAND adjudication is sufficient to avoid antitrust liability. (D.I. 15 at 12-14; *see also* D.I. 1 ¶ 90 ("[T]he nature of the arbitration

---

[4] Lenovo's claims might possibly survive even after such determinations, an issue the Court does not decide today. (*See generally* Tr. at 50-51) (Lenovo: "So when you look at the royalties demanded, you look at the portfolios that would be covered, you look at where and how royalties would be assessed on a geographic basis vis-à-vis InterDigital's actual patent holdings, you look at the relevant strength of patents, there could be a situation when you put that all together [that] doing it in arbitration is reasonable. But simply saying that it's going to be done in arbitration is not itself . . . a get-out-of-jail free card or cure-all.")

[5] The Court need not reach Lenovo's allegations that such proceedings are unfair or substantively biased against Lenovo. (*E.g.*, D.I. 15 at 10-14) These allegations, if taken as true, would provide additional grounds for the Court's conclusion as to the sufficiency of Lenovo's Section 2 claim.

13

that IDC seeks to coerce Plaintiffs into accepting is inherently biased toward achieving a non-FRAND result while also continuing to maintain a shroud of secrecy over IDC's abusive licensing behavior. . . . IDC's efforts to coerce Plaintiffs into arbitration is merely another means by which it seeks to take advantage of secrecy and its inflated counts of declared SEPs to extract non-FRAND royalties unsupported by the actual value of its global SEP portfolio."))

InterDigital's contention that Lenovo should be held to arguably-contradictory assertions it made in other litigations does not provide a meritorious basis to dismiss Lenovo's claims. For instance, InterDigital writes: "Lenovo/Motorola's Sherman Act claim also strains credulity given that Motorola itself successfully advocated arbitration of FRAND terms in a case where it had been accused of a Sherman Act Section 2 violation . . . ." (D.I. 8 at 11-12) InterDigital does not contend that Lenovo is estopped from pressing its claim here; nor has it not shown that, on a motion to dismiss, the Court must be skeptical of Lenovo's contentions based on arguments it made in other litigation, involving different patents, different parties, and different circumstances.

Nor does the United States' statement of interest alter the Court's conclusion. Instead, the United States' argument, which focuses mostly on Section 1, actually supports Lenovo's Section 2 position that *Broadcom*-type allegations suggest a "distortion of the competitive process." (D.I. 13 at 16) That is what Lenovo alleged: that InterDigital lied to ETSI in order to have its SEPs incorporated into the 3G and 4G LTE standards, allowing InterDigital to obtain and exploit market power and demand unlawful and artificially high rates. (D.I. 1 Ex. 2 ¶¶ 61-70)

IDC's belated argument at the hearing as to Lenovo's purported failure to define the relevant technology markets and who is foreclosed from them is also unavailing. InterDigital did

14

not brief this argument, so it has been waived. *See Tomaska v. Ira H. Weinstock, P.C.*, 357 F. App'x 472, 480 (3d Cir. 2009) ("It would be unfair to permit Weinstock to prevail on arguments raised for the first time at oral argument, a method of proceeding that can deprive one's opponent of any meaningful opportunity to respond.") In any event, Lenovo does adequately define an alleged relevant market. The complaint specifies that "the relevant markets are the markets for technologies covered by the IDC patents issued in the United States that are essential, or are alleged to be essential, to the Cellular Standards, together with all other alternative technologies to the IDC SEPs that could have been used in the Cellular Standards." (D.I. 1 ¶ 54) The complaint further alleges that Lenovo has been excluded from the relevant markets in that it cannot access the technology on FRAND terms. (D.I. 1 ¶ 93) These allegations are sufficient to withstand the motion to dismiss. *See Microsoft Mobile*, 2016 WL 1464545 at *1-2.

Accordingly, the Court will deny InterDigital's motion to dismiss Lenovo's Section 2 claim.

### D.   This Action Is A Compulsory Counterclaim

Lenovo's claims are required to be pled as compulsory counterclaims to InterDigital's first-filed patent infringement action against Lenovo, which is C.A. No. 19-1590, also pending in this District. The Court agrees with InterDigital that Lenovo's count three, the breach of contract claim, is logically related to InterDigital's claim for a declaratory judgment that InterDigital did ***not*** breach the same contract, which is a claim being pressed by InterDigital in the first-filed action. (*See* D.I. 8 at 19) In fact, Lenovo's claim is a mirror image of InterDigital's.

Lenovo argues that while the facts at issue in both its breach of contract claim and InterDigital's declaratory judgment are the same, the scope of the two claims are not identical. In Lenovo's view, InterDigital's case can end with non-infringement findings, and the

15

declaratory judgment claim thereby mooted, while Lenovo can obtain relief on its breach of contract claim even if it is determined that Lenovo has not infringed InterDigital's patents. (D.I. 15 at 19-20) This reasoning, even if credited, does not undermine the conclusion that there is a logical relationship between Lenovo's claim for breach of contract and InterDigital's claim for a declaratory judgment of no breach of that same contract. There will also be, obviously, tremendous evidentiary overlap between the two claims.

Lenovo's Section 2 claim is also a compulsory counterclaim because it arises out of the same facts and occurrences as the patent infringement claims filed by InterDigital in the earlier action. The Section 2 claim asserts that InterDigital intentionally deceived ETSI when it promised to license on FRAND terms. Discovery into whether InterDigital complied with its ETSI obligations by offering FRAND terms, which will be required on Lenovo's Section 2 claim, may also be probative of defenses Lenovo may raise to InterDigital's patent infringement allegations. Additionally, claim construction in InterDigital's action may have implications for whether the patents implicated by Lenovo's Section 2 claim here are or are not SEPs. Moreover, given Lenovo's allegation that IDC "overdeclares" its patents as essential (D.I. 1 ¶ 10), findings in the patent infringement action as to whether Lenovo infringes InterDigital's asserted patents could impact issues raised in Lenovo's action here.

Thus, again, the Court finds the two actions are logically related, and have evidentiary overlap. Therefore, Lenovo's claims must be pled as compulsory counterclaims in InterDigital's patent infringement action. The Court will order the two cases to be consolidated. (*See* Tr. at 31-32 (IDC indicating it was amenable to consolidation); *see also id.* at 71 (Lenovo identifying merits trial as only potential source of prejudice))

## IV. CONCLUSION

An appropriate Order follows.